UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

**CIVIL ACTION NO. 04-239-JBC**

**WASHTENAW MORTGAGE COMPANY, INC.,**                        **PLAINTIFF,**

**v.**               **MEMORANDUM OPINION AND ORDER**

**NATIONAL CITY BANK OF KENTUCKY, ET AL.,**             **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \* \*

This matter is before the court on Washtenaw Mortgage Company's second motion for summary judgment (DE 71) and on Elam and Miller's motion to amend its response and for the court to take judicial notice of opinions issued by the Kentucky Court of Appeals (DE 79). The court, having reviewed the record and being duly advised, will deny the motion for summary judgment and will grant Elam and Miller's motion.

**Facts:**

The facts in this case are complex and disputed. For the purposes of this motion, they are presented in the light most favorable to the defendants, who are the non-moving parties. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)

Washtenaw Mortgage Company ("Washtenaw") makes and services real estate loans. In the transaction giving rise to this litigation, Washtenaw attempted to acquire a mortgage on the property of Donald and Barber Clark. This property was subject to a first mortgage from Countrywide Home Loans ("Countrywide"). Under the terms of the transaction, Washtenaw would provide the Clarks with approximately $160,000 to satisfy Countrywide's mortgage. Other parties to the

transaction included the closing agent, Elam and Miller, and the mortgage broker, Consolidated Mortgage Company ("CMI"). The Clarks own CMI, and Washtenaw had worked with CMI and Elam and Miller on previous occasions.

In this transaction, Washtenaw sent Elam and Miller a check for $161,128.82 drawn on National City Bank of Kentucky ("National"). The check was payable to "Elam and Miller, Esquire." To insure that funds are properly distributed, Washtenaw does not allow certain checks, including the check in this case, to be paid until it issues a funding number. The funding number does not issue until Washtenaw is satisfied that certain conditions are met. Eventually, Washtenaw provided the funding number to Brenda Gentry, an employee of CMI. Ms. Gentry endorsed the check "Elam & Miller for deposit B&B, Ltd" and deposited it into an account at Bank One. The check was then paid by National. When the Clarks did not make payments as required by the mortgage contract, Washtenaw initiated foreclosure proceedings in Fayette Circuit Court. During these proceedings, Washtenaw learned that the money it loaned was not used to satisfy the Countrywide Mortgage, but was misappropriated. CMI has since had its mortgage broker's license revoked and has been fined by the Kentucky Department of Financial Institutions.

**Standard of Review:**

"Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "One of the principal purposes of the summary judgment rule is to isolate and

2

dispose of factually unsupported claims or defenses . . . ." *Celotex Corp.*, 477 U.S. at 323. In deciding the motion, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. A judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Browning*, 283 F.3d at 769 (quoting *Anderson*, 477 U.S. at 252).

**The Motion for Summary Judgment:**

Washtenaw argues that it is entitled to summary judgment against both National and Elam and Miller. Washtenaw argues that National failed to exercise ordinary care in handling its account by paying a check over an allegedly fraudulent endorsement, and that Elam and Miller breached its fiduciary duty by failing to follow instructions regarding the disbursement of funds.[1]

***Against National:***

"A bank may charge against the account of a customer an item that is properly payable . . . . An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank." K.R.S. § 355.4-401. A bank that pays over a fraudulent endorsement is not strictly liable for

---

[1] Washtenaw had also brought claims of theft and conversion against Elam and Miller. However, the parties agree that discovery has not produced evidence to support these claims and that they should be dismissed.

3

that payment. *See Gen. Accident Fire & Life Ins. Corp. v. Citizens Fid. Bank & Trust Co.*, 519 S.W.2d 817, 819 (Ky. 1975). Rather, the Uniform Commercial Code allocates the loss to the party that was in the best position to avoid it. *See id.* Although the drawee bank may be liable in some circumstances, in others, the drawer or a third party will be liable for the loss. *Compare id. with Bullitt County Bank v. Publishers Printing Co.*, 684 S.W.2d 289, 291-293 (Ky. Ct. App. 1985).

National argues that the endorsement on the check at issue was authorized by Elam and Miller and that the check was properly payable. Alternatively, even if the endorsement was not authorized, National argues that the check was payable because it was properly endorsed under K.R.S. § 355.3-405.[2] Under § 355.3-405, "if an employer entrusted an employee with responsibility with respect to the instrument and the employee or a person acting in concert with the employee makes a fraudulent endorsement of the instrument, the endorsement is effective as the endorsement of the person to whom the instrument is payable if it is made in the name of that person." However, a bank may still be liable for any loss if it fails to exercise ordinary care when paying the instrument. § 355.3-405(2). Ordinary care is defined as the "observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged." K.R.S. § 355.3-103(1)(g).

---

[2] National also argues that it has defenses under K.R.S. §§ 355.3-404 (the impostor rule) and 355.4-406 (the contributory negligence rule). However, the court need not conduct an in-depth analysis of these defenses to dispose of Washtenaw's motion for summary judgment.

4

The parties disagree as to whether and when an agent may endorse its principal's commercial paper. Accordingly, they disagree as to whether Ms. Gentry was authorized to endorse the check at issue in this ligation. Nevertheless, National also argues that even if the check was fraudulently endorsed, Ms. Gentry was an employee of Elam and Miller and that she was entrusted with responsibility with respect to the check.[3] Therefore, National argues that the endorsement is valid and the check was properly payable. Notwithstanding National's arguments, Washtenaw claims that National failed to exercise ordinary care. Washtenaw cites *Bullitt County Bank v. Publishers Printing Co.*, 684 S.W.2d 289 (Ky. Ct. App. 1985).

In *Bullitt*, an employee stole blank checks and presented them to his employer's bank ("Bullitt County Bank") for payment. Bullitt County Bank exchanged these checks for cashier's checks payable at a second bank without requiring the employee to endorse the original checks. The *Bullitt* court held that Bullitt County Bank breached its duty of ordinary care by accepting a check without an endorsement. That court also noted Bullitt County Bank's failure to notify Publishers of its employee's departure from his usual banking practices. The facts of *Bullitt* are distinguishable from those of the instant case. Here, National's putative error is not accepting a check without endorsement. Rather, Washtenaw claims that National paid the check over a fraudulent endorsement. As a matter of law, the court cannot

---

[3] "'Employee' includes an independent contractor and employee of an independent contractor retained by the employer." K.R.S. §355.3-405(1)(a). National argues that Ms. Gentry was an employee of CMI and that CMI was an independent contractor of Elam and Miller.

5

state that National's actions were so unreasonable as to constitute a breach of its duty of ordinary care. Therefore, summary judgment is inappropriate on this issue.

**Against Elam and Miller:**

In Kentucky, a fiduciary relationship is "founded on trust or confidence reposed by one person in the integrity and fidelity of another. . . [where] a duty is created in one person to act primarily for another's benefit . . . . " *Steelvest, Inc. V. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 485 (Ky. 1991). A party who breaches its duty of care can be liable for damages caused by the breach. *See Illinois Cent. R.R. v. Vincent*, 412 S.W.2d 874, 876 (Ky. 1967). Whether a breach of duty was the proximate cause of damages is a question of fact. *House v. Kellerman*, 519 S.W.2d 380, 382 (Ky. 1975).

Elam and Miller argues that there are disputed issues of material fact as to whether its alleged breach of duty was the proximate cause of Washtenaw's damages.[4] In its responsive pleading, Elam and Miller cites several events that might have proximately caused Washtenaw's damages, including Washtenaw's issuance of a funding number to Ms. Gentry, CMI's employee; Washtenaw's failure to timely notify National of the allegedly fraudulent endorsement; and CMI's ultimate

---

[4] Elam and Miller also argues that Washtenaw's claims are barred by the applicable statute of limitations and asks the court to dismiss them. Because the court will deny Washtenaw's motion for summary judgment on alternative grounds, the court will not address this argument. To the extent that Elam and Miller wishes the court to dismiss any of Washtenaw's claims, it must file an appropriate motion as required by the Federal Rules of Civil Procedure and this court's local rules, so that the parties may fully brief the issue.

6

conversion of the closing funds. Therefore, there are disputed issues of material fact as to whether any breach by Elam and Miller caused damages, and summary judgment is inappropriate. Accordingly,

**IT IS ORDERED** that Washtenaw's motion for summary judgment (DE 72) is **DENIED**.

**IT IS FURTHER ORDERED**, pursuant to agreement between Elam and Miller and Washtenaw, that Washtenaw's allegations of theft and conversion against Elam and Miller are **DISMISSED**.

**IT IS FURTHER ORDERED** that Elam and Miller's motion for leave to supplement and for the court to take judicial notice (DE 79) is **GRANTED**. The court notes that opinions containing findings of fact and conclusions of law relating to Washtenaw's conversion claim against CMI are filed in the office of the Clerk of the Kentucky Court of Appeals; (b) that CMI had an opportunity to fully litigate its defenses to the charges of the Kentucky Department of Financial Institutions ("DFI"); and (c) that the DFI charges against CMI relating to the Clark's closing on their mortgage refinancing of the property at 1817 Headley Green, Lexington, are now final and non-appealable.

**IT IS FURTHER ORDERED** that Elam and Miller's motion for an extension of time to file a reply concerning an earlier motion to withdraw (DE 68) is **DENIED AS MOOT**.

Signed on April 28, 2006

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY