**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CIVIL ACTION NO. 04-239-JBC**

**ELAM & MILLER, P.S.C.,**                                                    **PLAINTIFF,**

**V.**                        **MEMORANDUM OPINION AND ORDER**

**NATIONAL CITY BANK OF KENTUCKY, ET AL.,**                **DEFENDANTS.**

*** * * * * * * * * * ***

This matter is before the court on the plaintiff's motion for summary

judgment (DE 108), the defendant's motion for an extension of time to file a

response to the plaintiff's motion for summary judgment (DE 109), and the

defendant's cross-motion for summary judgment (DE 111).  The court, having

reviewed the record and being otherwise advised, will grant the defendant's motion

for an extension of time (DE 109), deny the defendant's cross-motion for summary

judgment (DE 111), and grant the plaintiff's motion for summary judgment

(DE 108).

**I.      BACKGROUND**

In the transaction giving rise to this litigation, Washtenaw Mortgage

Company ("Washtenaw") attempted to acquire a mortgage on the property of

Donald and Barber Clark.  This property was subject to a first mortgage from

Countrywide Home Loans ("Countrywide").  Under the terms of the transaction,

Washtenaw would provide the Clarks with approximately $160,000 to satisfy

Countrywide's mortgage.  Other parties to the transaction included the closing

agent (and the remaining plaintiff), Elam & Miller, as well as the mortgage broker

(and the remaining defendant), Consolidated Mortgage, Inc. ("CMI").  The Clarks

own CMI, and Washtenaw had worked with CMI and Elam & Miller on previous

occasions.

In the transaction, Washtenaw sent Elam & Miller a check for $161,128.82

drawn on National City Bank of Kentucky ("National").  The check was payable to

"Elam and Miller, Esquire."  Somehow, CMI came into possession of the check;

according to Elam & Miller, CMI stole the check from its office.  To ensure that

funds are properly distributed, Washtenaw does not allow certain checks, including

the check in this case, to be paid until it issues a funding number, and the funding

number does not issue until Washtenaw is satisfied that certain conditions have

been met.  Eventually, Washtenaw provided the funding number to Brenda Gentry,

an employee of CMI.  Gentry endorsed the check "Elam & Miller for deposit, B&B,

Ltd" and deposited it into an account at Bank One.  The check was then paid by

National.

When the Clarks failed to make payments as required by the mortgage

contract, Washtenaw initiated foreclosure proceedings in Fayette Circuit Court.

During these proceedings, Washtenaw learned that the money it loaned was not

used to satisfy the Countryside mortgage but was misappropriated.  CMI has since

had its mortgage broker's license revoked and has been fined by the Kentucky

2

Department of Financial Institutions ("DFI").

Washtenaw then filed suit in this court against several defendants, including both Elam & Miller and CMI, seeking to recover the misappropriated funds. *See, e.g.*, DE 41-1 at 4-5, 6-7 (stating conversion, negligence, and breach of fiduciary duty claims against Elam & Miller and a conversion claim against CMI). Elam & Miller filed a cross-claim against National for conversion pursuant to Ky. Rev. Stat. § 355.3-420, alleging that the check had been taken from its office without its knowledge, consent, or permission; fraudulently endorsed; deposited by Gentry into the Bank One account; and paid by National over a fraudulent endorsement. (DE 4 at 8-10.) National then filed a third-party complaint against Bank One for breach of warranties and for a right to defense (DE 6-2).

Over the course of this litigation, the court denied Washtenaw's motions for summary judgment against National (DE 55, DE 85), denied Washtenaw's motion for summary judgment against Elam & Miller (DE 85), and granted Elam & Miller's motion to take judicial notice of opinions containing findings of fact and conclusions of law relating to Washtenaw's conversion claim against CMI which have been filed with the Clerk of the Kentucky Court of Appeals (DE 85).[1] Pursuant to various agreements between the parties, and following a status conference on June 7,

---

[1] The court also noted that CMI had an opportunity to fully litigate its defenses to the DFI charges and that the DFI charges against CMI are now final and non-appealable. (DE 85 at 7.)

3

2006, the court dismissed all of Washtenaw's claims against Elam & Miller,[2] National, and Gentry.  (DE 92 at 1.)  During this status conference, Washtenaw moved to dismiss its claims against CMI, but Elam & Miller objected and later filed a written response indicating that Washtenaw had withdrawn its oral motion and assigned its conversion claim against CMI to Elam & Miller.  (DE 92 at 1, DE 96 at 1-2.)

On June 30, 2006, the court entered an agreed order of dismissal (DE 97), signed by representatives for Washtenaw, Elam & Miller, National, and Chase Bank, N.A., as Bank One's successor.  This order dismissed Washtenaw's claims "that were or could have been asserted . . . in this action" against National, Elam & Miller, and Chase; dismissed Elam & Miller's cross-claims "that were or could have been asserted . . . in this action" against National and Chase; and dismissed National's third-party claims "that were or could have been asserted against Chase . . . with each party bearing its own costs."  (DE 97 at 1.)  This order did not specifically refer to Washtenaw's conversion claim against CMI, but it did expressly provide that "Washtenaw's claims against other parties not executing this stipulated Order of Dismissal[,]" such as CMI, "remain and are preserved for further consideration and adjudication by the Court."  *Id.*  On February 2, 2007, the court issued an order construing Washtenaw's motion to assign its conversion claim

---

[2]  Pursuant to to an agreement between Elam & Miller and Washtenaw, the court had previously dismissed Washtenaw's allegations of theft and conversion against Elam & Miller.  (DE 85 at 7.)

4

against CMI to Elam & Miller as a motion to substitute Elam & Miller for

Washtenaw as the plaintiff pursuant to Federal Rule of Civil Procedure 25(c) and

granting that motion to substitute (DE 101).  Elam & Miller and CMI then filed the

motions presently before the court.

## II.   STANDARD OF REVIEW

"Summary judgment is proper where there are no genuine issues of material

fact in dispute and the moving party is entitled to judgment as a matter of law."

*Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (citing Fed. R. Civ. P. 56(c)).

In ruling on a motion for summary judgment, the court must view the evidence and

draw all reasonable inferences in favor of the opposing party.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986).  Therefore, the court should not "'weigh the

evidence and determine the truth of the matter but . . . determine whether there is

a genuine issue for trial.'"  *Browning*, 283 F.3d at 769 (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A genuine issue for trial exists only if

there is "evidence on which the jury could reasonably find for the" opposing party.

*Anderson*, 477 U.S. at 252.

The initial burden of showing the absence of a genuine issue of material fact

is on the moving party.  *Celotex*, 477 U.S. at 323.  Once the moving party has met

its burden, the opposing party "must do more than simply show that there is some

metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, "the nonmoving party must come

forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Id.* at

587 (quoting Fed. R. Civ. P. 56(e)) (emphasis in *Matsushita*).  Evidence that is

"merely colorable, or is not significantly probative," is not sufficient to avoid

summary judgment.  *Anderson*, 477 U.S. at 249 (internal citations omitted).

Furthermore, "the moving party need not support its motion with evidence

disproving the nonmoving party's claim, but need only 'show – that is, point out to

the district court – that there is an absence of evidence to support the nonmoving

party's case.'"  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996) (quoting

*Celotex*, 477 U.S. at 325).

## III.   ANALYSIS

As an initial matter, the court will grant the defendant's motion for an

extension of time to file a response to the plaintiff's motion for summary judgment

(DE 109).  Furthermore, although the defendant's cross-motion for summary

judgment was untimely, the court will also consider, over the plaintiff's objection,

the merits of the cross-motion before considering the merits of the plaintiff's

motion for summary judgment.

## A.   The Defendant's Cross-Motion for Summary Judgment (DE 111)

In support of its cross-motion for summary judgment (DE 111) the defendant

raises several issues.

### 1.   Elam & Miller's Alleged Lack of Interest in any Claim Against CMI

First, the defendant suggests, without legal citation or other support, that

6

"Elam & Miller did not take any interest in any 'claim' against CMI; if anything, it took a *property* interest in a note and mortgage against Donald and Barber Clark individually." (DE 111-1 at 12.) This is incorrect. In a previous order substituting Elam & Miller for Washtenaw as the plaintiff in this case, the court found "that Washtenaw has in fact granted Elam & Miller all of its 'remaining right, title, and interest in and to the Claims involved in this case.'" (DE 101 at 3 (quoting DE 100-2 at 2).) Therefore, pursuant to Rule 25 of the Federal Rules of Civil Procedure, the court substituted Elam & Miller for Washtenaw as the plaintiff on the remaining conversion claim against CMI in this case.

### 2.    Elam & Miller's Allegedly Improper Acquisition of Chicago Title's Interest

Second, the defendant suggests that Elam & Miller improperly acquired an interest in the disputed sum from Chicago Title Insurance Company ("Chicago Title"). *See* DE 111-1 at 12 (arguing that Elam & Miller's "interest was somehow taken from Chicago Title by Elam & Miller before Washtenaw had ever assigned its interest to Chicago Title in the first place" and suggesting that Elam & Miller's counsel deliberately hid Elam & Miller's acquisition of this assignment from CMI's counsel). Therefore, the defendant claims that Elam & Miller has "no rights to the amount in controversy whatsoever, and a trial on the underlying issues of fact would be a pointless excursion." *Id.*

Chicago Title's role in this matter will be discussed at greater length below, in connection with CMI's response to the plaintiff's motion for summary judgment.

Although the confusing discrepancy in dates associated with Chicago Title's assignment of its interest to Elam & Miller must be explored in connection with Elam & Miller's motion for summary judgment, at this point, the court merely notes that CMI has not explained how this assignment supports its entitlement to summary judgment.

### 3.    The Prior Ruling of the Kentucky Court of Appeals

Third, the defendant claims that a prior ruling by the Kentucky Court of Appeals prohibits Elam & Miller from pursuing its claim against CMI or the Clarks individually, even if Washtenaw and Chicago Title made valid assignments of their claims to Elam & Miller.  (DE 111-1 at 12-13.)  A copy of the unpublished ruling of the Kentucky Court of Appeals in *Mortgage Elec. Registration Sys. v. Clark*, No. 2005-CA-002144-MR, 2007 WL 1454339 (Ky. Ct. App. May 18, 2007), is attached to the defendant's motion.  Based on this opinion, the defendant suggests that "principles of judicial estoppel[3] foreclose any reasonable argument Elam & Miller might make in favor of its purported claims against CMI."  (DE 111-1 at 13.)

---

[3]  "The doctrine of judicial estoppel prohibits a party from asserting a position in a legal proceeding that is contrary to a position successfully taken by the party in some earlier proceeding."  *Eckstein v. Cincinnati Ins. Co.*, 469 F. Supp. 2d 444, 451 (W.D. Ky. 2007) (citing *Reynolds v. Comm'r*, 861 F.2d 469, 472 (6th Cir. 1988)).  Judicial estoppel, therefore, is not the appropriate term for the defendant's argument.  The court believes that the defendant's argument should be analyzed as an argument based on collateral estoppel, which "bars a party from relitigating any issue actually litigated and finally decided in an earlier action."  *Eckstein*, 469 F. Supp. 2d at 452 (citing *Buis v. Elliott*, 142 S.W.3d 137, 140 (Ky. 2004)).  Accordingly, the court will refer to this argument below as an argument for collateral, rather than judicial, estoppel.

In this opinion, the Kentucky Court of Appeals affirmed a decision of the Fayette Circuit Court denying Washtenaw's motion to alter, amend, or vacate a previous order from that court dismissing Washtenaw's complaint.  The Fayette Circuit Court dismissed Washtenaw's complaint "because Washtenaw failed to prosecute the matter and failed to comply with the court's pretrial order," and the Kentucky Court of Appeals held that this dismissal was an appropriate exercise of the Fayette Circuit Court's discretion.  *See Mortgage Elec. Registration Sys.*, 2007 WL 1454339, at ** 2-3.  Therefore, these state court decisions did not involve a final decision or judgment on the merits, which is a necessary element of collateral estoppel.  *See, e.g.*, *Eckstein v. Cincinnati Ins. Co.*, 469 F. Supp. 2d 444, 452 (W.D. Ky. 2007) (citing *Moore v. Commonwealth, Cabinet for Human Res.*, 954 S.W.2d 317, 319 (Ky. 1997), and listing "a final decision or judgment on the merits" as an essential element of collateral estoppel).  Having thus found this argument deficient, the court will not consider it at any greater length.

**B.     The Plaintiff's Motion for Summary Judgment (DE 108)**

Under Kentucky law, "[t]he elements of a conversion claim are (1) ownership rights in a certain property, (2) the wrongful act of taking or disposing of property, and (3) causing damages."  *Davis v. Siemens Medical Solutions USA, Inc.*, 399 F. Supp. 2d 785, 801 (W.D. Ky. 2005) (citing, inter alia, *Goss v. Bisset*, 411 S.W.2d 50, 53 (Ky. 1967)).  According to Elam & Miller, the undisputed evidence shows "that Washtenaw issued a $161,128.82 check in exchange for a note and first

9

mortgage" on the Clarks' property.  (DE 108-2 at 6.)  Elam & Miller also claims that the undisputed evidence shows that CMI, "the mortgage broker for this mortgage refinance closing, . . . through its Treasurer, Brenda Gentry, and at the direction of its Vice-President, Barber Clark, . . . chose to take that money and apply it to another CMI customer's prior mortgage."[4]  *Id.*  Finally, Elam & Miller claims that Washtenaw suffered damages as a result of this improper disposition of the check. As a result, Elam & Miller concludes, it is entitled to summary judgment as Washtenaw's substitute on Washtenaw's conversion claim for the full amount of this check, plus interest, costs, and fees.

Although CMI has raised a number of arguments against Elam & Miller's motion for summary judgment, it does not dispute this basic and central factual account.  Thus, the court finds that there is no material issue of fact as to the central remaining issue in this litigation: whether CMI wrongfully disposed of Washtenaw's property, thereby causing damages.  Therefore, the court further finds that Elam & Miller, as Washtenaw's substitute in this litigation, has satisfied the elements of a conversion claim against CMI.  Below, the court will consider the specific arguments set forth in CMI's response, which purport to show why summary judgment in the plaintiff's favor is inappropriate.

---

[4]  To support this claim, the plaintiff relies in part on excerpts from Gentry's deposition.  In her deposition, Gentry was asked if she had "an opinion as to what happened to the money that was supposed to go to Countrywide based upon the settlement statement in the Clark loan[.]" (DE 72-8 at 55.)  In response, Gentry said that the money "went to pay another . . . a closing for a mortgage previously. Whose I don't remember."  *Id.*

### 1.    The Chicago Title Assignment

To analyze the defendant's initial argument, it is necessary to first explore Chicago Title's role in this case.  On June 28, 2006, representatives from Washtenaw, Chicago Title, and Elam & Miller signed a document, in which Chicago Title and Washtenaw assigned their interest in the note and mortgage at issue in this case, their interest in the state court foreclosure action, and their interest in this lawsuit to Elam & Miller.  (DE 100-2 at 1-4.)  After this Assignment Agreement was signed, notarized deeds of assignment were signed.  In the first notarized deed, executed on July 6, 2006, Chicago Title assigned its interest in the note and mortgage to Elam & Miller.  (DE 110-2 at 3-4.)  In the second, executed on July 17, 2006, Mortgage Electronic Registration Systems, Inc., as nominee for Washtenaw, assigned its interest in the mortgage to Chicago Title, which, of course, had already executed a deed of assignment assigning this same interest to Elam & Miller several days earlier. (DE 110-2 at 6-7.)

Based on this discrepancy in dates, the defendant claims that "Elam & Miller has attempted to perpetrate a fraud on the Court by asserting what it characterizes as a 'conversion claim' against CMI when, in fact, Elam & Miller took, at most," a claim against the Clark's individually "on a note and a mortgage."  (DE 110-1 at 4.) Therefore, the defendant concludes that "the rights supposedly granted were a nullity, even if properly assigned."  *Id.*

With respect to Elam & Miller's retention of Washtenaw's conversion claim,

11

the court notes that it has addressed this issue repeatedly: this court has substituted Elam & Miller for Washtenaw as the plaintiff for the conversion claim against CMI.  CMI has not contested this claim's merits, and the court has found that Elam & Miller is entitled to summary judgment on the face of this claim.  CMI's present argument does not provide a reason for the court to alter that substitution.

With respect to Elam & Miller's retention of Chicago Title's interest, Elam & Miller concedes that "[t]he recordable assignments were not completed at the time the Assignment Agreement was made and [instead they] were circulated for signatures once completed"; however, Elam & Miller argues that this difference in dates is not material to its own motion for summary judgment, CMI's response thereto, or CMI's own cross-motion for summary judgment.  (DE 112 at 5.)  In this the plaintiff is correct.  The Assignment Agreement of June 26, 2006, between Washtenaw, Chicago Title, and Elam & Miller (DE 100-2) – an agreement to which CMI was not a party – sets forth the intentions of the contracting parties in plain and clear language, and CMI has not shown how the subsequent discrepancy in the dates of the recorded and notarized deeds of assignment undermines the clarity of this initial agreement.  Moreover, CMI has not shown how the subsequent discrepancy in the dates of the recorded and notarized deeds of assignment prejudiced its defense or undermined the parties' agreement.  Therefore, the court finds that this discrepancy provides no reason to deny summary judgment to Elam

& Miller on its conversion claim.[5]

### 2.    Elam & Miller's Corporate Status

CMI also argues that the assignments discussed above are invalid because Elam & Miller had ceased to exist at the time the assignments were made, and because under Kentucky law a dissolved corporate entity may not carry on any business other than winding up and liquidating its business and affairs.  Thus, CMI concludes, Elam & Miller's current claim based upon those assignments is similarly invalid.  In response, Elam & Miller points out that this litigation has been pending since May 27, 2004, well before its dissolution, and that its involvement in this case and a related state case "is in fact the winding up of its last business affairs." (DE 112 at 6.)  The court finds that the above assignments were taken for the purpose of winding up this litigation and Elam & Miller's affairs, and therefore, the court finds that Elam & Miller's dissolution provides no reason to deny its motion for summary judgment.

### 3.    The Court's Prior Orders Denying Washtenaw's Motions for Summary Judgment

----

[5]  In connection with this argument, CMI also claims that "[t]he Kentucky Court of Appeals put to rest once and for all the viability of any claim by Washtenaw or its assignees against the Clarks" in its decision of May 18, 2007. (DE 110-1 at 3.)  As discussed above, this argument is incorrect: neither the Kentucky Court of Appeals decision to which CMI refers nor the earlier Fayette Circuit Court decision from which the appeal was taken involved a final decision on the merits of Washtenaw's claim, and therefore, these decisions did not foreclose Elam & Miller's current conversion claim as Washtenaw's substitute.

Moreover, CMI's concerns about the payment to Washtenaw by Chicago Title, *see* DE 110-1 at 6, are derivative of the ultimately immaterial arguments about the dates discussed immediately above and are thus equally unpersuasive.

According to CMI, because the court has previously ruled that genuine issues of material fact precluded summary judgment on Washtenaw's claims against defendants other than CMI, including Elam & Miller, disputed issues of material fact continue to preclude summary judgment on the remaining conversion claim against CMI.[6]  (DE 110-1 at 5 (citing DE 55, 85).)  But none of these previous claims or motions for summary judgment were filed against CMI, and therefore, the court's previous findings do not necessarily mean that material issues of fact remain with respect to the remaining conversion claim against CMI.  Moreover, CMI does not contest the factual account upon which the remaining conversion claim rests.  Accordingly, the court finds that its previous orders denying summary judgment on Washtenaw's claims against the other defendants do not preclude Elam & Miller's present motion for summary judgment against CMI.

### 4.    Estoppel

In general, "[t]he doctrine of judicial estoppel prohibits a party from asserting a position in a legal proceeding that is contrary to a position successfully taken by the party in some earlier proceeding."  *Eckstein v. Cincinnati Ins. Co.*, 469 F. Supp. 2d 444, 451 (W.D. Ky. 2007) (citing *Reynolds v. Comm'r*, 861 F.2d 469, 472 (6th

---

[6]  More specifically, CMI alleges that "continuing issues of fact remain as to not only whether the check in controversy was stolen and/or forged, and to whether Brenda Gentry was authorized to endorse the check in controversy, but also whether any other party – including Washtenaw – was contributorily negligent if Gentry was not so authorized."  (DE 110-1 at 7.)  CMI has not, however, pointed to any evidence to support these conclusory allegations, nor has CMI provided any argument to show why these alleged issues of fact would frustrate Elam & Miller's present motion for summary judgment even if evidence existed to support them.

14

Cir. 1988)).  Kentucky courts have held that "familiar principles of estoppel" also forbid a party from assuming "inconsistent or contradictory positions with respect to the same matter *in the same* or a successive series of suits . . . ." *Rowe*, 283 S.W.2d 188, 190 (Ky. 1955).  At the same time, Kentucky courts have also permitted parties to submit "inconsistent and alternative pleadings" in certain circumstances – for example, in situations where the inconsistency "only relate[s] to procedural rights."  *Ingram v. Ingram*, 283 S.W.2d 210, 212 (Ky. 1955); *see also Ky. Nat'l Ins. Co. v. Lester*, 998 S.W.2d 499 (Ky. Ct. App. 1999) (rejecting an argument based on estoppel principles, and holding that "[p]leading in the alternative is of course a standard legal practice, and absent extraordinary circumstances such alternative pleading is not binding as a judicial admission") (internal quotation omitted).

Citing *Rowe*, CMI suggests that Elam & Miller's present motion for summary judgment should be estopped because it is inconsistent with prior statements made by Washtenaw against Elam & Miller and by Elam & Miller against Washtenaw. These allegedly inconsistent statements include Washtenaw's general misappropriation claim against Elam & Miller, Elam & Miller's argument that material issues of fact precluded summary judgment for Washtenaw on its claims against Elam & Miller, and Elam & Miller's argument that Washtenaw's claims were time-barred.  *See* DE 110-1 at 8-10.  None of these allegedly inconsistent statements bars Elam & Miller's current motion for summary judgment on Washtenaw's

15

conversion claim.

More specifically, CMI has not shown that Washtenaw's claims against Elam & Miller or Elam & Miller's defenses to these claims are inconsistent with Washtenaw's separate conversion claim against CMI or Elam & Miller's present motion for summary judgment on that claim.[7]  Thus, they do not estop Elam & Miller's present motion.  With respect to Elam & Miller's previous argument that Washtenaw's claims were time-barred, even if this prior argument is inconsistent with Elam & Miller's present motion for summary judgment – an issue which the court need not and does not reach – it does not estop Elam & Miller's present motion because the alleged inconsistency "only relate[s] to procedural rights." *Ingram*, 283 S.W.2d at 190.   Accordingly,

**IT IS ORDERED** that the defendant's motion for an extension of time to file a response to the plaintiff's motion for summary judgment (DE 109) is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendant's cross-motion for summary judgment (DE 111) is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment

---

[7]  For example, Elam & Miller previously argued that disputed issues of fact exist as to whether the check was ever received in its office.  But this argument is not inconsistent with its present position that no material issues of fact exist as to CMI's conversion of the check.  As discussed above, under Kentucky law, a conversion claim requires the wrongful act of taking *or disposing of property*.

Therefore, any issues of fact as to whether the check arrived in Elam & Miller's office, though material to Washtenaw's claims against Elam & Miller, are immaterial for Elam & Miller's present motion for summary judgment because, regardless of how CMI came to possess the check, there is no material dispute that CMI wrongfully disposed of it.

16

(DE 108) is **GRANTED**.

      **IT IS FURTHER ORDERED** that the trial of this matter, now scheduled for

October 29, 2007, is **CANCELED**.

      Signed on September 11, 2007

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY